**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| **FEC HOLDINGS, LP, a Texas limited partnership; FEC MESQUITE, LP; a Texas limited partnership; FEC CHAMPIONS, LP, a Texas limited partnership; FEC OKC MACARTHUR, LLC, an Oklahoma limited liability company; FEC SUGARLAND, LP, a Texas limited partnership; FEC EULESS, LP, a Texas limited partnership; FEC PASADENA, LP, a Texas limited partnership; FEC LAFAYETTE, LLC, a Louisiana limited liability company; FEC EL PASO, LP, a Texas limited partnership; and LLOYD ROBERT FRENCH, III, an individual,** | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| **Plaintiffs,** | ) ) |
| **v.** | ) **CIVIL ACTION NO. 10-3042-CV-S-RED** ) |
| **INCREDIBLE PIZZA FRANCHISE GROUP, LLC, a Missouri limited liability company, RICHARD BARSNESS, an individual, and CHERYL BARSNESS, an individual,** | ) ) ) ) ) ) |
| **Defendants.** | ) |

## ANSWER AND AMENDED COUNTERCLAIM

Defendants Incredible Pizza Franchise Group, LLC ("Incredible Pizza"), Richard Barsness and Cheryl Barsness (collectively the "Defendants") by their attorneys, and as and for their answer and amended counterclaim state as follows:

## ANSWER AND AFFIRMATIVE DEFENSES

## INTRODUCTION

1.      Admit.

2.      Admit.

3.      Admit.

4.      Admit.

5.      Deny.

6.      Paragraph 6 states a legal conclusion to which no response is required.  To the extent that a response is required, the Defendants deny the allegations of Paragraph 6.

7.      Deny.

8.      Deny.

9.      Deny.

10.     Deny.

11.     Deny.

12.     Deny.

13.     Defendants lack knowledge or information sufficient to form belief as to the truth of the allegations of Paragraph 13, and therefore deny them.

14.     Deny.

15.     Deny.

16.     Deny.

17.     Deny.

18.     Deny.

## **PARTIES**

19.     Admit.

20.     Admit.

21.     Defendants lack knowledge or information sufficient to form belief as to the truth of the allegations of Paragraph 21, and therefore deny them.

22.     Defendants lack knowledge or information sufficient to form belief as to the truth of the allegations of Paragraph 22, and therefore deny them.

23.     Admit.

24.     Admit.

25.     Admit.

26.     Admit.

27.     Admit.

28.     Admit.

29.     Defendants admit that Incredible Pizza is a Missouri limited liability company with its principal place of business at 2522 South Campbell, Springfield, Missouri and that Incredible Pizza is the franchisor of Incredible-Pizza branded "family entertainment centers."

30.     Deny.

31.     Deny.

## JURISDICTION AND VENUE

32.     Deny.

33.     Deny.

34.     Defendants admit that venue is proper in the United States District Court for the Western District of Missouri.  Defendants deny the remaining allegations in Paragraph 34.

## FACTS

35.     Defendants lack knowledge or information sufficient to form belief as to the truth of the allegations of Paragraph 35, and therefore deny them.

36.     Defendants lack knowledge or information sufficient to form belief as to the truth of the allegations of Paragraph 36, and therefore deny them.

37.     Defendants lack knowledge or information sufficient to form belief as to the truth of the allegations of Paragraph 37, and therefore deny them.

38.     Defendants lack knowledge or information sufficient to form belief as to the truth of the allegations of Paragraph 38, and therefore deny them.

39.     Deny.

40.     Defendants admit the Mr. Mullen visited Springfield, Missouri.  Defendants deny the remaining allegations of Paragraph 40.

41.     Deny.

42.     Deny.

### Richard and Cheryl Barsness and IPC Make Pre-Sale Representations Regarding Incredible Pizza Franchise Opportunities[1]

43.     Deny.

44.     Exhibit A speaks for itself.  Defendants deny any allegations inconsistent with Exhibit A and deny the remaining allegations in Paragraph 44.

45.     Exhibit A speaks for itself.  Defendants deny any allegations inconsistent with Exhibit A and deny the remaining allegations in Paragraph 45.

46.     Exhibit A speaks for itself.  Defendants deny any allegations inconsistent with Exhibit A and deny the remaining allegations in Paragraph 46.

---

[1]     Defendants include the headings and subheadings used in the plaintiffs' complaint for the Court's convenience.  To the extent these headings are subheadings can be construed as allegations, Defendants deny any and all allegations contained in any of plaintiffs' headings or subheadings.

47.     Exhibit A speaks for itself.  Defendants deny any allegations inconsistent with Exhibit A and deny the remaining allegations in Paragraph 46.

48.     Deny.

49.     Deny.

50.     Deny.

51.     Deny.

52.     Deny.

53.     Defendants admit that Richard and Cheryl Barsness knew that a "John's Incredible Pizza Company" was operating in the State of California.  Defendants deny the remaining allegations in Paragraph 53.

54.     Deny.

55.     Deny.

56.     Deny.

**IPC Makes Earnings Claims Based On Its Company Store's Financials**

57.     Deny.

58.     Deny.

59.     Deny.

60.     Deny.

61.     Exhibit B speaks for itself.  Defendants deny any allegations inconsistent with Exhibit B and deny the remaining allegations of Paragraph 61.

62.     Exhibit B speaks for itself.  Defendants deny any allegations inconsistent with Exhibit B and deny the remaining allegations of Paragraph 62.

63.     Deny.

64.     Deny.

65.     Defendants lack knowledge or information sufficient to form belief as to the truth of the allegations of Paragraph 65, and therefore deny them.

66.     Exhibit D speaks for itself.  Defendants deny any allegations inconsistent with Exhibit D and deny the remaining allegations of Paragraph 67.

67.     Exhibit D speaks for itself.  Defendants deny any allegations inconsistent with Exhibit D and deny the remaining allegations of Paragraph 67.

68.     Deny.

## The 2003 UFOC

69.     Defendants admit Incredible Pizza provided Mr. French with a copy of Incredible Pizza's 2003 UFOC ("2003 UFOC") on September 17, 2003.  Defendants deny the remaining allegations of Paragraph 69.

70.     Paragraph 70 states a legal conclusion to which no response is required.  To the extent that a response is required, the Defendants deny the allegations of Paragraph 70.

71.     Deny.

72.     Paragraph 72 states a legal conclusion to which no response is required.  To the extent that a response is required, the Defendants deny the allegations of Paragraph 72.

73.     Paragraph 73 states a legal conclusion to which no response is required.  To the extent that a response is required, the Defendants deny the allegations of Paragraph 73.

74.     Deny.

75.     Deny.

76.     Deny.

### *Fee Obligation Disclosure Under Item 6*

6

77.     Paragraph 77 states a legal conclusion to which no response is required.  To the extent that a response is required, the Defendants deny the allegations of Paragraph 77.

78.     The 2003 UFOC speaks for itself.  Defendants deny any allegations inconsistent with the 2003 UFOC and deny the remaining allegations in Paragraph 78.

79.     The 2003 UFOC speaks for itself.  Defendants deny any allegations inconsistent with the 2003 UFOC and deny the remaining allegations in Paragraph 79.

80.     Deny.

81.     Deny.

### *Purchase Obligations and Vendor Rebate Disclosures Under Item 8*

82.     Paragraph 82 states a legal conclusion to which no response is required.  To the extent that a response is required, the Defendants deny the allegations of Paragraph 82.

83.     Paragraph 83 states a legal conclusion to which no response is required.  To the extent that a response is required, the Defendants deny the allegations of Paragraph 83.

84.     The 2003 UFOC speaks for itself.  Defendants deny any allegations inconsistent with the 2003 UFOC and deny the remaining allegations in Paragraph 84.

85.     The 2003 UFOC speaks for itself.  Defendants deny any allegations inconsistent with the 2003 UFOC and deny the remaining allegations in Paragraph 85.

86.     The 2003 UFOC speaks for itself.  Defendants deny any allegations inconsistent with the 2003 UFOC and deny the remaining allegations in Paragraph 86.

87.     Deny.

88.     Deny.

89.     Deny.

### *Trademark Disclosures Under Item 13*

90.     Paragraph 90 states a legal conclusion to which no response is required.  To the extent that a response is required, the Defendants deny the allegations of Paragraph 90.

91.     The 2003 UFOC speaks for itself.  Defendants deny any allegations inconsistent with the 2003 UFOC and deny the remaining allegations in Paragraph 91.

92.     The 2003 UFOC speaks for itself.  Defendants deny any allegations inconsistent with the 2003 UFOC and deny the remaining allegations in Paragraph 92.

93.     The 2003 UFOC speaks for itself.  Defendants deny any allegations inconsistent with the 2003 UFOC and deny the remaining allegations in Paragraph 93.

94.     Deny.

### *Earnings Claims Disclosures Under Item 19*

95.     Paragraph 95 states a legal conclusion to which no response is required.  To the extent that a response is required, the Defendants deny the allegations of Paragraph 95.

96.     Paragraph 96 states a legal conclusion to which no response is required.  To the extent that a response is required, the Defendants deny the allegations of Paragraph 96.

97.     Paragraph 97 states a legal conclusion to which no response is required.  To the extent that a response is required, the Defendants deny the allegations of Paragraph 97.

98.     Paragraph 98 states a legal conclusion to which no response is required.  To the extent that a response is required, the Defendants deny the allegations of Paragraph 98.

99.     Paragraph 99 states a legal conclusion to which no response is required.  To the extent that a response is required, the Defendants deny the allegations of Paragraph 99.

100.     Paragraph 100 states a legal conclusion to which no response is required.  To the extent that a response is required, the Defendants deny the allegations of Paragraph 100.

101.     Paragraph 101 states a legal conclusion to which no response is required.  To the extent that a response is required, the Defendants deny the allegations of Paragraph 101.

102.     The 2003 UFOC speaks for itself.  Defendants deny any allegations inconsistent with the 2003 UFOC and deny the remaining allegations in Paragraph 102.

103.     The 2003 UFOC speaks for itself.  Defendants deny any allegations inconsistent with the 2003 UFOC and deny the remaining allegations in Paragraph 103.

104.     Deny.

105.     Deny.

106.     Deny.

107.     The 2003 UFOC speaks for itself.  Defendants deny any allegations inconsistent with the 2003 UFOC and deny the remaining allegations in Paragraph 107.

108.     The 2003 UFOC speaks for itself.  Defendants deny any allegations inconsistent with the 2003 UFOC and deny the remaining allegations in Paragraph 108.

109.     The 2003 UFOC speaks for itself.  Defendants deny any allegations inconsistent with the 2003 UFOC and deny the remaining allegations in Paragraph 109.

110.     Deny.

111.     Deny.

112.     The ADA speaks for itself.  Defendants deny any allegations inconsistent with the ADA and deny the remaining allegations in Paragraph 112.

113.     The ADA speaks for itself.  Defendants deny any allegations inconsistent with the ADA and deny the remaining allegations in Paragraph 113.

114.     The ADA speaks for itself.  Defendants deny any allegations inconsistent with the ADA and deny the remaining allegations in Paragraph 114.

115.	The 2003 UFOC and ADA speak for themselves.	Defendants deny any allegations inconsistent with the 2003 UFOC and ADA, and deny the remaining allegations in Paragraph 115.

116.	The 2003 UFOC and ADA speak for themselves.	Defendants deny any allegations inconsistent with the 2003 UFOC and ADA, and deny the remaining allegations in Paragraph 116.

117.	The 2003 UFOC and ADA speak for themselves.	Defendants deny any allegations inconsistent with the 2003 UFOC and ADA, and deny the remaining allegations in Paragraph 117.

118.	The 2003 UFOC and ADA speak for themselves.	Defendants deny any allegations inconsistent with the 2003 UFOC and ADA, and deny the remaining allegations in Paragraph 118.

119.	The 2003 UFOC and ADA speak for themselves.	Defendants deny any allegations inconsistent with the 2003 UFOC and ADA, and deny the remaining allegations in Paragraph 119.

120.	Deny.

121.	Defendants lack knowledge or information sufficient to form belief as to the truth of the allegations of Paragraph 121, and therefore deny them.

122.	Deny.

123.	Deny.

**The Letter Agreement**

124.	Defendants admit Incredible Pizza and L.R. French on behalf of Whole Family Entertainment, L.P. entered into a 2003 Letter Agreement ("Letter Agreement").	Defendants

deny any allegations inconsistent with the Letter Agreement and deny the remaining allegations of Paragraph 124.

125.    The Letter Agreement speaks for itself.  Defendants deny any allegations inconsistent with the Letter Agreement and deny the remaining allegations of Paragraph 125.

126.    The Letter Agreement speaks for itself.  Defendants deny any allegations inconsistent with the Letter Agreement and deny the remaining allegations of Paragraph 126.

### The Houston Franchise Agreement

127.    Defendants admit that on April 16, 2004, FEC Houston 1960 LP and Incredible Pizza executed a Franchise Agreement for operation of an Incredible Pizza Company franchise in Houston, Texas, and that a copy of that Franchise Agreement is attached to plaintiffs' complaint as Exhibit H (the "Houston Franchise Agreement").  Defendants deny the remaining allegations of Paragraph 127.

128.    Deny.

129.    The Houston Franchise Agreement speaks for itself.  Defendants deny allegations inconsistent with the Houston Franchise Agreement and deny the remaining allegations of Paragraph 129.

### The 2004 UFOC

130.    Defendants admit Incredible Pizza provided FEC with a copy of Incredible Pizza's 2004 UFOC ("2004 UFOC").  Defendants deny the remaining allegations of Paragraph 130.

### *Fee Obligation Disclosure Under Item 6*

131.    The 2004 UFOC speaks for itself.  Defendants deny any allegations inconsistent with the 2004 UFOC and deny the remaining allegations in Paragraph 131.

132. The 2004 UFOC speaks for itself. Defendants deny any allegations inconsistent with the 2004 UFOC and deny the remaining allegations in Paragraph 132.

133. Deny.

### *Purchase Obligations and Vendor Rebate Disclosures Under Item 8*

134. The 2004 UFOC speaks for itself. Defendants deny any allegations inconsistent with the 2004 UFOC and deny the remaining allegations in Paragraph 134.

135. The 2004 UFOC speaks for itself. Defendants deny any allegations inconsistent with the 2004 UFOC and deny the remaining allegations in Paragraph 135.

136. The 2004 UFOC speaks for itself. Defendants deny any allegations inconsistent with the 2004 UFOC and deny the remaining allegations in Paragraph 136.

137. The 2004 UFOC speaks for itself. Defendants deny any allegations inconsistent with the 2004 UFOC and deny the remaining allegations in Paragraph 137.

138. The 2004 UFOC and ADA speak for themselves, and Defendants deny any allegations inconsistent therewith. Defendants lack knowledge or information sufficient to form a belief as to the allegations remaining in paragraph 138 and therefore deny them.

### *Trademark Disclosures Under Item 13*

139. The 2004 UFOC speaks for itself. Defendants deny any allegations inconsistent with the 2004 UFOC and deny the remaining allegations in Paragraph 139.

140. The 2004 UFOC speaks for itself. Defendants deny any allegations inconsistent with the 2004 UFOC and deny the remaining allegations in Paragraph 140.

141. The 2004 UFOC speaks for itself. Defendants deny any allegations inconsistent with the 2004 UFOC and deny the remaining allegations in Paragraph 141.

142. The 2004 UFOC speaks for itself. Defendants deny any allegations inconsistent with the 2004 UFOC and deny the remaining allegations in Paragraph 142.

### *Earnings Claims Disclosure Under Item 19*

143. The 2004 UFOC speaks for itself. Defendants deny any allegations inconsistent with the 2004 UFOC and deny the remaining allegations in Paragraph 143.

144. Deny.

145. Deny.

146. Deny.

147. Deny.

148. Deny.

149. Deny.

### Whole Family Assigns the ADA to FEC

150. Admit.

### The Oklahoma City Franchise Agreement

151. Defendants admit that on August 12, 2004, FEC MacArthur LLC and Incredible Pizza executed a Franchise Agreement for operation of an Incredible Pizza Company franchise in Oklahoma City, and that a copy of that Franchise Agreement is attached to plaintiffs' complaint as Exhibit J ("Oklahoma City Franchise Agreement"). Defendants deny the remaining allegations of Paragraph 151.

152. Deny.

153. The Oklahoma City Franchise Agreement speaks for itself. Defendants deny any allegations inconsistent with the Oklahoma City Franchise Agreement and deny the remaining allegations in Paragraph 152.

**IPC Makes More Earnings Claims**

154.    Exhibit K speaks for itself.  Defendants deny any allegations inconsistent with Exhibit K and deny the remaining allegations in Paragraph 154.

155.    Exhibit K speaks for itself.  Defendants deny any allegations inconsistent with Exhibit K and deny the remaining allegations in Paragraph 155.

156.    Exhibit L speaks for itself.  Defendants deny any allegations inconsistent with Exhibit L and deny the remaining allegations in Paragraph 156.

157.    Exhibit L speaks for itself.  Defendants deny any allegations inconsistent with Exhibit L and deny the remaining allegations in Paragraph 157.

158.    Deny.

**The Sugarland Franchise Agreement**

159.    Defendants admit that on April 1, 2005, FEC Sugarland, LP and Incredible Pizza executed a Franchise Agreement for operation of an Incredible Pizza Company Franchise in Sugarland Texas, and that a copy of that Franchise Agreement is attached to plaintiffs' complaint as Exhibit M ("Sugarland Franchise Agreement").  Defendants deny the remaining allegations of Paragraph 159.

160.    Deny.

161.    The Sugarland Franchise Agreement speaks for itself.  Defendants deny any allegations inconsistent with the Sugarland Franchise Agreement and deny the remaining allegations in Paragraph 161.

**The Management Agreements**

162.    Deny.

163. Exhibit N speaks for itself. Defendants deny any allegations inconsistent with Exhibit N and deny the remaining allegations of Paragraph 163.

164. Exhibit N speaks for itself. Defendants deny any allegations inconsistent with Exhibit N and deny the remaining allegations of Paragraph 164.

165. Exhibit N speaks for itself. Defendants deny any allegations inconsistent with Exhibit N and deny the remaining allegations of Paragraph 165.

166. Exhibit N speaks for itself. Defendants deny any allegations inconsistent with Exhibit N and deny the remaining allegations of Paragraph 166.

167. Deny.

168. Defendants admit that on October 21, 2005, FEC Sugarland, LP and Incredible Pizza entered into a Management Agreement. Exhibit O speaks for itself. Defendants deny any allegations inconsistent with Exhibit O and deny the remaining allegations of Paragraph 168.

169. Exhibit O speaks for itself. Defendants deny any allegations inconsistent with Exhibit N and deny the remaining allegations of Paragraph 169.

170. Deny.

171. Exhibit P speaks for itself. Defendants deny any allegations inconsistent with Exhibit P and deny the remaining allegations in Paragraph 171.

172. Deny.

173. Deny.

174. Deny.

**The Euless Franchise Agreement**

175. Defendants admit that on April 4, 2006, FEC Euless, LP and Incredible Pizza executed a Franchise Agreement for operation of an Incredible Pizza Company Franchise in

15

Euless Texas, and that a copy of that Franchise Agreement is attached to plaintiffs' complaint as Exhibit Q ("Euless Franchise Agreement"). Defendants deny the remaining allegations of Paragraph 175.

176. Deny.

177. Exhibit Q speaks for itself. Defendants deny any allegations inconsistent with Exhibit Q and deny the remaining allegations in Paragraph 177.

### The Pasedena Franchise Agreement

178. Defendants admit that on April 4, 2006, FEC Pasadena, LP and Incredible Pizza executed a Franchise Agreement for operation of an Incredible Pizza Company Franchise in Pasadena, Texas and that a copy of that Franchise Agreement is attached to plaintiffs' complaint as Exhibit R ("Pasedena Franchise Agreement"). Defendants deny the remaining allegations of Paragraph 178.

179. Deny.

180. Exhibit R speaks for itself. Defendants deny any allegations inconsistent with Exhibit N and deny the remaining allegations in Paragraph 180.

### The Pasedena Franchise Agreement

181. Defendants admit that on April 4, 2006, FEC Lafayette, LP and Incredible Pizza executed a Franchise Agreement for operation of an Incredible Pizza Company Franchise in Lafayette, Louisiana and that a copy of that Franchise Agreement is attached to plaintiffs' complaint as Exhibit S ("Lafayette Franchise Agreement"). Defendants deny the remaining allegations of Paragraph 181.

182. Deny.

183.     Exhibit Q speaks for itself.  Defendants deny any allegations inconsistent with Exhibit N and deny the remaining allegations of Paragraph 183.

## Management Agreements and Store Openings

184.     Deny.

185.     The Pasadena Management Agreement speaks for itself.  Defendants deny any allegations inconsistent therewith and deny the remaining allegations of Paragraph 185.

186.     Deny.

187.     Admit.

188.     Deny.

189.     Deny.

## The 2007 UFOC

190.     Incredible Pizza admits that it provided plaintiffs with an updated copy of Incredible Pizza's 2007 UFOC ("2007 UFOC").  Defendants deny the remaining allegations of Paragraph 190.

### *Fee Obligation Disclosure Under Item 6*

191.     The 2007 UFOC speaks for itself.  Defendants deny any allegations inconsistent with the 2007 UFOC and deny the remaining allegations in Paragraph 191.

192.     The 2007 UFOC speaks for itself.  Defendants deny any allegations inconsistent with the 2007 UFOC and deny the remaining allegations in Paragraph 192.

193.     The 2007 UFOC speaks for itself.  Defendants deny any allegations inconsistent with the 2007 UFOC and deny the remaining allegations in Paragraph 193.

194.     The 2007 UFOC speaks for itself.  Defendants deny any allegations inconsistent with the 2007 UFOC and deny the remaining allegations in Paragraph 194.

195. The 2007 UFOC speaks for itself. Defendants deny any allegations inconsistent with the 2007 UFOC and deny the remaining allegations in Paragraph 195.

196. The 2007 UFOC speaks for itself, and Defendants deny any allegations inconsistent therewith. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 196, and therefore deny them.

### *Trademark Disclosures Under Item 13*

197. The 2007 UFOC speaks for itself. Defendants deny any allegations inconsistent with the 2007 UFOC and deny the remaining allegations in Paragraph 197.

198. The 2007 UFOC speaks for itself. Defendants deny any allegations inconsistent with the 2007 UFOC and deny the remaining allegations in Paragraph 198.

199. The 2007 UFOC speaks for itself. Defendants deny any allegations inconsistent with the 2007 UFOC and deny the remaining allegations in Paragraph 199.

### *Earnings Claims Disclosure Under Item 19*

200. The 2007 UFOC speaks for itself. Defendants deny any allegations inconsistent with the 2007 UFOC and deny the remaining allegations in Paragraph 200.

201. The 2007 UFOC speaks for itself. Defendants deny any allegations inconsistent with the 2007 UFOC and deny the remaining allegations in Paragraph 201.

202. The 2007 UFOC speaks for itself. Defendants deny any allegations inconsistent with the 2007 UFOC and deny the remaining allegations in Paragraph 202.

203. Deny.

204. Deny.

205. Deny.

206.    The 2007 UFOC speaks for itself.  Defendants deny any allegations inconsistent with the 2007 UFOC and deny the remaining allegations in Paragraph 206.

207.    The 2007 UFOC speaks for itself.  Defendants deny any allegations inconsistent with the 2007 UFOC and deny the remaining allegations in Paragraph 207.

### The El Paso Franchise Agreement

208.    Defendants admit that on December 19, 2007, FEC El Paso, LP and Incredible Pizza executed a Franchise Agreement for operation of an Incredible Pizza Company Franchise in El Paso, Texas and that a copy of that Franchise Agreement is attached to plaintiffs' complaint as Exhibit U ("El Paso Franchise Agreement").  Defendants deny the remaining allegations of Paragraph 208.

209.   Deny.

210.    The El Paso Franchise Agreement speaks for itself.  Defendants deny any allegations inconsistent therewith and deny the remaining allegations of Paragraph 210.

211.   Admit.

### The Houston Location Closes and the Mesquite Location Opens

212.    Defendants admit that FEC Champions closed the Houston location on March 24, 2008.  Defendants lack knowledge or information sufficient to admit or deny the remaining allegations of Paragraph 212, and therefore deny them.

213.   Deny.

214.    Defendants admit that the Mesquite location opened on June 26, 2008. Defendants lack knowledge or information sufficient to admit or deny the remaining allegations of Paragraph 214, and therefore deny them.

**Plaintiffs Discover the Misleading Nature of IPC's Representations and Omissions**

215. Defendants lack knowledge or information sufficient to admit or deny the allegations in Paragraph 215, and therefore deny them.

216. Deny.

217. Deny.

218. Deny.

219. Deny.

220. Deny.

221. Deny.

222. Deny.

223. Deny.

224. Deny.

225. Deny.

226. Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 226, and therefore deny them.

227. Deny.

228. Deny.

229. Deny.

230. Deny.

231. Deny.

232. Deny.

233. Deny.

**Plaintiffs' Losses**

234.    Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 234, and therefore deny them.

235.    Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 235, and therefore deny them.

236.    Defendants admit that plaintiffs bring this action to rescind the ADA, the Franchise Agreements and all related agreements and to recover an award of damages. Defendants deny the plaintiffs are entitled to any of the relief they seek and deny the remaining allegations of Paragraph 236.

**COUNT I**
**Fraud/Fraudulent Inducement**

237.    Deny.

238.    Paragraph 238 states a legal conclusion to which no response is required. To the extent that a response is required, Defendants deny the allegations of Paragraph 238.

239.    Paragraph 239 states a legal conclusion to which no response is required. To the extent that a response is required, Defendants deny the allegations of Paragraph 239.

240.    Deny.

241.    Deny.

242.    Deny.

243.    Deny.

244.    Deny.

245.    Deny.

246.    Deny.

## COUNT II
## Violations of the Texas Business Opportunity Act

247.    Paragraph 247 states a legal conclusion to which no response is required.  To the extent that a response is required, Defendants deny the allegations of Paragraph 247.

248.    Paragraph 248 states a legal conclusion to which no response is required.  To the extent that a response is required, Defendants deny the allegations of Paragraph 248.

249.    Paragraph 249 states a legal conclusion to which no response is required.  To the extent that a response is required, Defendants deny the allegations of Paragraph 239.

250.    Deny.

251.    Deny.

252.    Deny.

253.    Paragraph 253 states a legal conclusion to which no response is required.  To the extent that a response is required, the Defendants deny the allegations of Paragraph 253.

254.    Deny.

255.    Deny.

256.    Deny.

257.    Deny.

258.    Deny.

259.    Deny.

260.    Deny.

261.    Deny.

## COUNT III
## Breach of Contract and the Implied Covenant of Good Faith and Fair Dealing

262. Paragraph 262 states a legal conclusion to which no response is required. To the extent that a response is required, Defendants deny the allegations of Paragraph 262.

263. Paragraph 263 states a legal conclusion to which no response is required. To the extent that a response is required, Defendants deny the allegations of Paragraph 263.

264. Paragraph 264 states a legal conclusion to which no response is required. To the extent that a response is required, Defendants deny the allegations of Paragraph 264.

265. The Franchise Agreements speak for themselves. Defendants deny any allegations inconsistent with the Franchise Agreements and deny the remaining allegations in Paragraph 265.

266. Deny.

267. Deny.

268. Paragraph 268 states a legal conclusion to which no response is required. To the extent that a response is required, Defendants deny the allegations of Paragraph 268.

269. Deny.

270. Deny.

271. Deny.

## COUNT IV
## Violations of the Texas Deceptive Trade Practices—Consumer Protection Act

272. Paragraph 272 states a legal conclusion to which no response is required. To the extent that a response is required, Defendants deny the allegations of Paragraph 272.

273. Paragraph 273 states a legal conclusion to which no response is required. To the extent that a response is required, Defendants deny the allegations of Paragraph 273.

274. Paragraph 274 states a legal conclusion to which no response is required. To the extent that a response is required, Defendants deny the allegations of Paragraph 274.

275. Paragraph 275 states a legal conclusion to which no response is required. To the extent that a response is required, Defendants deny the allegations of Paragraph 275.

276. Deny.

277. Deny.

278. Deny.

279. Deny.

280. Deny.

281. Deny.

282. Deny.

283. Deny.

284. Deny.

**COUNT V**
**Violations of Oklahoma Deceptive Trade Practices Act**

285. Paragraph 285 states a legal conclusion to which no response is required. To the extent that a response is required, Defendants deny the allegations of Paragraph 285.

286. Deny.

287. Deny.

288. Paragraph 288 states a legal conclusion to which no response is required. To the extent that a response is required, the Defendants deny the allegations of Paragraph 288.

289. Deny.

290. Deny.

## COUNT VI
## Violations of Oklahoma Consumer Protection Act

291.     Paragraph 291 states a legal conclusion to which no response is required.  To the extent that a response is required, Defendants deny the allegations of Paragraph 291.

292.     Paragraph 292 states a legal conclusion to which no response is required.  To the extent that a response is required, Defendants deny the allegations of Paragraph 292.

293.     Deny.

294.     Deny.

295.     Paragraph 295 states a legal conclusion to which no response is required.  To the extent that a response is required, Defendants deny the allegations of Paragraph 295.

296.     Deny.

297.     Deny.

## COUNT VII
## Negligent Misrepresentation

298.     Paragraph 298 states a legal conclusion to which no response is required.  To the extent that a response is required, Defendants deny the allegations of Paragraph 298.

299.     Paragraph 299 states a legal conclusion to which no response is required.  To the extent that a response is required, Defendants deny the allegations of Paragraph 299.

300.     Deny.

301.     Deny.

302.     Deny.

## COUNT VIII
## Violations of Section 2(c) of the Robinson Patman Act

303. Paragraph 303 states a legal conclusion to which no response is required. To the extent that a response is required, Defendants deny the allegations of Paragraph 303.

304. Paragraph 304 states a legal conclusion to which no response is required. To the extent that a response is required, Defendants deny the allegations of Paragraph 304.

305. Deny.

306. Deny.

307. Deny.

308. Deny.

309. Deny.

## AFFIRMATIVE DEFENSES

1. Plaintiffs have failed to state a claim upon which relief can be granted.

2. Plaintiffs' claims are barred by the applicable statute of limitations.

3. Plaintiffs are barred from asserting any cause of action by reason of the Doctrine of Laches.

4. Plaintiffs have comingled multiple actions and have therefore failed to plead or elect their remedy.

5. All damages, if any, sustained by plaintiffs, were directly and proximately caused or were directly and proximately contributed to be caused by the negligent acts, actions or omissions of plaintiffs.

6. Defendants have thoroughly performed contractual obligations in their relationship with plaintiffs to the extent Defendants have contractual obligations plaintiffs.

7.     Plaintiffs have fully accepted Defendants' performance of all contractual obligations, to the extent of any contractual relationship, and have thus waived any cause of action.

8.     Plaintiffs are not entitled to recover on their alleged causes of action and are barred by reason of the fact that any alleged damages suffered by Plaintiffs were the direct and proximate result of plaintiffs' failure to take actions to mitigate said damages.

9.     Plaintiffs' claims are barred because they failed to comply with the mandatory mediation requirements in the franchise agreements before filing suit.

## AMENDED COUNTERCLAIM FOR DAMAGES AND INJUNCTIVE RELIEF

1.     Defendant/counterclaim plaintiff Incredible Pizza brings counterclaims against all plaintiffs for breach of their area development agreement and seven franchise agreements. Incredible Pizza also seeks, preliminary and permanent injunctive relief ordering plaintiffs/counterclaim defendants to comply with the franchise agreements by honoring Incredible Pizza's options to assume the leases and to purchase the assets of plaintiffs' Incredible Pizza centers.

2.     Six of the Plaintiffs, FEC OKC MacArthur, LLC, FEC Sugarland, LP, FEC Euless, LP, FEC Pasadena, LP, FEC Lafayette, LLC and FEC El Paso, LP (the "Debtor Companies"), filed for relief under chapter 11 of the United States Bankruptcy Code on March 8, 2010, commencing Case Nos. 10-50287 through 10-50292 (the "Bankruptcy Cases") on the docket of the United States Bankruptcy Court for the Western District of Louisiana, Lafayette Division.  As a result of the filing of the Bankruptcy Cases, the automatic stay of section 362(a) of the Bankruptcy Code prevents, inter alia, the commencement or continuation of any action or proceeding in the Court against the Debtor Companies.  Notwithstanding anything contained

herein to the contrary, this Amended Counterclaim for Damages and Injunctive Relief is not intended, and shall not be construed in any way, to be an act in violation of section 362 of the Bankruptcy Code in the Bankruptcy Cases. Any and all claims and/or causes of action asserted by Incredible Pizza against the Debtor Companies in the original Counterclaim previously filed herein are stayed and not dismissed; however, they can be pursued by Incredible Pizza if the automatic stay is modified, terminated or lifted.

## PARTIES

3.     Incredible Pizza is a Missouri limited liability company with its principal place of business at 2522 South Campbell, Springfield, Missouri. Incredible Pizza is the franchisor of family entertainment centers offering all-you-can-eat buffets, 50's-themed dining, private party rooms, and fairgrounds containing games, rides and attractions for all ages of the family.

4.     Plaintiffs/counterclaim defendants consist of the seven entities that entered into the seven franchise agreements at issue (or their assignees); the entity that entered into the Area Development Agreement with Incredible Pizza; and Lloyd Robert French, III, who personally guaranteed certain provisions of the agreements and who is the principal of each plaintiff counter defendant entity. Incredible Pizza hereunder pursues claims against each and every named plaintiff counter defendant.

## FACTS

A.     **The Area Development Agreement**

5.     On November 25, 2003, Whole Family Entertainment, L.P. ("Whole Family") signed the Area Development Agreement ("ADA"), a copy of which is attached to plaintiffs' complaint as Exhibit F. According to plaintiffs' complaint, Whole Family later assigned its rights under the ADA to plaintiff FEC Holdings, LP.

6.      Under the ADA, Whole Family (and later FEC Holdings, LP), agreed to develop a total of 35 Incredible Pizza centers in 15 markets in the Midwest, South and Southwest United States in accordance with the development schedule set forth in the ADA.

**B.      The Franchise Agreements**

7.      Between April 2004 and December 2007, plaintiffs entered into a total of seven franchise agreements for the operation of Incredible Pizza centers.  These seven agreements are collectively referred to herein as the "Franchise Agreements."

8.      On April 16, 2004, FEC Houston 1960 LP entered into a franchise agreement to operate an Incredible Pizza center in Houston, Texas.[2]  (Houston Franchise Agreement, attached to plaintiffs' complaint as Exhibit H.)  The Incredible Pizza center operated by the applicable plaintiff under this agreement is referred to herein as the "Mesquite Center."

9.      On August 12, 2004, plaintiff FEC OKC MacArthur, LLC entered into a franchise agreement to operate an Incredible Pizza center in Oklahoma City, Oklahoma.  (Oklahoma City Franchise Agreement, attached to plaintiffs' complaint as Exhibit J.) The center operated pursuant to the Oklahoma City Franchise Agreement is located in Warr Acres, Oklahoma and is is referred to herein as the "Warr Acres Center."

10.      On April 1, 2005, plaintiff FEC Sugarland, LP entered into a franchise agreement to operate an Incredible Pizza center in Sugarland, Texas.  (Sugarland Franchise Agreement,

---

[2]      According to plaintiffs' complaint, FEC Houston 1960, LP no longer exists. According to the complaint, "The Houston-area Incredible Pizza franchise is operated and funded by FEC Champions, LP, a party to this action" and "[a]ll of FEC Houston's interests in the Houston-area Incredible Pizza Franchise were transferred to FEC Champions." The Houston Center was transferred to Mesquite, Texas, and FEC Champions transferred its interest to FEC Mesquite.

attached to plaintiffs' complaint as Exhibit M.)  The Incredible Pizza center operated by the applicable plaintiff under this agreement is referred to herein as the "Sugarland Center."

11.     On April 4, 2006, plaintiff FEC Euless, LP entered into a franchise agreement to operate an Incredible Pizza center in Euless, Texas.  (Euless Franchise Agreement, attached to plaintiffs' complaint as Exhibit Q.)  The Incredible Pizza center operated by the applicable plaintiff under this agreement is referred to herein as the "Euless Center."

12.     On April 4, 2006, plaintiff FEC Pasadena, LP entered into a franchise agreement to operate an Incredible Pizza center in Pasadena, Texas. (Pasadena Franchise Agreement, attached to plaintiffs' complaint as Exhibit R.)  The Incredible Pizza center operated by the applicable plaintiff under this agreement is referred to herein as the "Pasadena Center."

13.     On April 4, 2006, plaintiff FEC Lafayette, LLC entered into a franchise agreement to operate an Incredible Pizza center in Lafayette, Louisiana.  (Lafayette Franchise Agreement, attached to plaintiffs' complaint as Exhibit S.)  The Incredible Pizza center operated by the applicable plaintiff under this agreement is referred to herein as the "Lafayette Center."

14.     On Dec 19, 2007, plaintiff FEC El Paso, L.P. entered into a franchise agreement to operate an Incredible Pizza center in El Paso, Texas.  (El Paso Agreement, attached to Plaintiffs' complaint as Exhibit U.)  The Incredible Pizza center operated by the applicable plaintiff under this agreement is referred to herein as the "El Paso Center."

15.     Each franchise agreement grants Incredible Pizza an option to acquire the assets of the center in the event the agreement is terminated, exercisable within 30 days of the termination.  Specifically, section 16.6 of each of the agreements states:

**Company's Option to Purchase FEC**.  Upon the termination or expiration of the franchise, we shall have the option, but not the obligation, exercisable for thirty (30) days upon written notice of you, to purchase at fair market value all of the assets of the FEC including all approved equipment, games, rides attractions,

redemption and other merchandise, fixtures furniture and signs and all glassware, utensils, supplies, materials and other items imprinted with any Mark. If we cannot agree on the fair market value of the assets of the FEC within a reasonable period of time, such value shall be determined by the following process: each of us shall select an independent appraiser which shall appraise the assets of the FEC. The values established by each of the appraisers shall be combined and averaged to determine the fair market value of the FEC. We shall not assume any liabilities, debts or obligations of the FEC in connection with any such transfer and you shall indemnify us from any and all claims made against us raising our of any such transfer of the assets of the FEC. The parties shall comply with all applicable laws in connection with any such transfer and you shall cooperate with the Company in complying with all such requirements.

(Franchise Agreements; Section 16.6, attached plaintiffs' complaint as Exs. H, J, M, Q, R, S, U.)

16. Section 16.7 of each agreement also grants Incredible Pizza an option to acquire the premises or leasehold upon which the center was operated. It provides:

**Real Property.** In the event you own the real property on which the FEC is located, we will also have the option to purchase this property for a period of thirty (30) days following expiration or termination of this Agreement. If we cannot agree on the fair market value of the property within a reasonable period of time, such value shall be determined by the following process: each of us shall select an independent appraiser which shall appraise the real property. The values established by each of the appraisers shall be combined and averaged to determine the fair market value of the property. The purchase price will be payable in full at the closing, minus customary prorations, including the pay-off of existing mortgage. If you lease the real property on which the FEC is located, we also have the option to assume the lease from you on a prospective basis under the original terms and conditions negotiated by you and the landlord and you may continue to be liable under the lease for the remainder of the term of the lease.

(*Id.* § 16.7.)

17. On November 25, 1003, Incredible Pizza and Mr. French also executed a letter agreement ("Letter Agreement") which provides with regard to Sections 16.6 and 16.7 of the franchise agreements:

It is the intent of the Parties in Section 16.6 and 16.7 of the Franchise Agreement that if the appraisers' reports show a discrepancy of 20% or more, then the two appraisers will submit their appraisal to an independent appraiser chosen by the them whose appraisal shall bind both Parties, the cost of such third appraiser to be shared by the Parties.

(Letter Agreement, attached to plaintiffs' complaint as Ex. G, ¶ 3(i).)

18.     The Letter Agreement also provides:

[T]he intent of the Parties in Section 8 to the Development Agreement is that French may terminate any Franchise Agreement if the FEC operating under the Franchise Agreement has been operating at a loss, as determined by French's independent accountant in accordance with generally accepted accounting principles, for three (3) consecutive months.

. . . .

The intent of the Parties in Section 15 of the Franchise Agreement is that French may terminate any Franchise Agreement at will, upon at least 90 days' advance written notice to Incredible of termination, with no contingent liabilities if the related FEC has been operating at a loss, as defined in Section 3(b) above, for (3) consecutive months.

(Letter Agreement ¶¶ 3(b) & 3(c).)

19.     Mr. French executed guarantees of plaintiffs' agreements, personally guaranteeing the performance of certain obligations contained in the agreements, including the financial obligations under the agreements.

20.     The Letter Agreement also provides:  "It is the Intent of the Parties that L.R. French, III is not guarantying Section 7.3 of the Franchise Agreement (Indemnification) when executing the Guaranty attached to the franchise agreement; provided, however that L.R. French, III shall be personally responsible for all of the financial obligations described in such Guaranty."

### C.     Plaintiffs' Refusal To Honor Incredible Pizza's Purchase Option

21.     After entering into each of the seven franchise agreements, plaintiffs commenced operation of the seven centers.  Plaintiffs have operated under each of the franchise agreements for at least two years or more.

22.     On November 25, 2009, plaintiffs sent notices to Incredible Pizza stating that, pursuant to sections 3(b) and 3(c) of the Letter Agreement, plaintiffs were terminating each of

their seven franchise agreements with Incredible Pizza effective March 7, 2010 because each center had operated at a loss for three consecutive months.

23. Incredible Pizza responded to plaintiffs' November 25, 2009 letters on December 4, 2009, stating that Incredible Pizza did not presently have sufficient information to evaluate whether each of plaintiffs' centers had in fact operated at a loss for the past three months, as plaintiffs claimed. Incredible Pizza stated that if in fact the FECs had not operated at a loss for three consecutive months, plaintiffs termination of the franchise agreements would be improper and a violation of the agreements. Incredible Pizza also reminded plaintiffs of its option to purchase at fair market value the assets of each center and to assume the leaseholds. Incredible Pizza requested that plaintiffs provide it with their opinion of fair market value of the assets and stated that if the parties cannot reach an agreement on fair market value, Incredible Pizza "will select an independent appraiser to value the assets and expect you to do the same pursuant to the terms of the franchise agreement."

24. On December 14, 2009, plaintiffs sent a letter to Incredible Pizza setting forth their estimate of the fair market value of the assets of each of their Incredible Pizza centers. Recognizing that plaintiffs' estimates of fair market value for the assets deviated substantially from Incredible Pizza's own estimates, Incredible Pizza retained an independent appraiser to value the assets of each center.

25. Consistent with the appraisal process set forth in the agreements, on January 6, 2010, Tony Cox of Incredible Pizza sent an email to the managing partner at plaintiffs' Warr Acres Center stating that an appraiser would arrive at the store on January 7, 2010 to appraise the assets of the center. On January 7, 2010, plaintiffs told Incredible Pizza that the appraiser's visit

was neither "necessary [n]or appropriate" given that "Incredible Pizza never exercised its option rights within the applicable 30 day time period."

26.     That same day, Incredible Pizza sent a letter to French providing its estimates of the fair market value of the assets of each of plaintiffs' centers.  Incredible Pizza's fair market value estimates were several millions of dollars less than plaintiffs' estimates.  The letter further provided that because the estimates are so far apart, Incredible Pizza was making arrangements to have an independent appraiser provide Incredible Pizza with an appraisal of the assets of each center, consistent with the terms of the franchise agreements. Incredible Pizza also reminded plaintiffs that, pursuant to the franchise agreements, "[Incredible Pizza] or our agents have the right, at any reasonable time and without advance notice to you, inspect the Premises."

27.     On January 19, 2010, Incredible Pizza learned that, without any prior notice and in violation of the franchise agreement, plaintiffs had unilaterally closed the Mesquite Center the previous day.  After receiving confirmation of the closure from the Mesquite Center's terminated employees and suppliers, Incredible Pizza sent a Notice of Termination based on the center's improper closure.  The Notice further stated that Incredible Pizza was thereby exercising its option to purchase the assets of the Mesquite Center and that Incredible Pizza's independent appraiser would be at the center the following day to conduct an appraisal in accordance with the franchise agreement.  The letter asked that plaintiffs "not move, transfer, impair or damage the assets of the [Mesquite Center]" and that plaintiffs comply strictly with the post-termination obligations set forth in Section 16 of the franchise agreement.  Despite their obligations under the franchise agreement, plaintiffs proceeded to sell the Mesquite assets to third parties.

28.     Since sending their November 25, 2009 notices, purporting to terminate their franchise agreements effective March 7, 2010, plaintiffs have continued to operate their

Incredible Pizza centers (with the exception of the Mesquite Center) and to use the Incredible Pizza marks. Also, since November 25, 2009, plaintiffs have continued to receive ongoing marketing support from Incredible Pizza, have participated in numerous lengthy marketing calls with Incredible Pizza representatives, and continue to receive marketing materials from Incredible Pizza for ongoing promotions.

**COUNT I**
**BREACH OF CONTRACT – SPECIFIC PERFORMANCE**

29.     Incredible Pizza repeats and re-alleges ¶¶ 1 through 28 of its Amended Counterclaim as and for this ¶ 29, as if fully set forth herein.

30.     Plaintiffs' failure to comply with Sections 16.6 and 16.7 of the Franchise Agreements constitutes a material breach of the Franchise Agreements.

31.     Incredible Pizza has no adequate legal remedy for plaintiffs' breach because its damages, including harm to its goodwill, loss of customers and loss of the opportunity to assume the leases on unique real property are difficult to quantify, and therefore monetary damages alone cannot adequately, completely and fully compensate Incredible Pizza for the harm caused by plaintiffs' misconduct.

32.     Unless enjoined and ordered by the Court to comply with Section 16.6 and 16.7 of the Franchise Agreements, plaintiffs' breach will continue to cause Incredible Pizza irreparable harm.

## COUNT II
## BREACH OF CONTRACT – AREA DEVELOPMENT AGREEMENT

33. Incredible Pizza repeats and realleges ¶¶ 1-32 of its Amended Counterclaim as and for this ¶ 33, as if fully set forth herein.

34. Plaintiffs' failure to develop Incredible Pizza centers in accordance with the development schedule set forth in the Area Development Agreement constitutes a material breach of the Area Development Agreement.

35. As a result of plaintiffs' breach, Incredible Pizza has been injured and has suffered damages including, without limitation, loss of revenues, profits, attorneys' fees and expenses, pre and post judgment interest and other actual, consequential and incidental damages for which it seeks recovery against all plaintiffs, jointly and severally.

## COUNT III
## BREACH OF CONTRACT – WRONGFUL TERMINATION

36. Incredible Pizza repeats and realleges ¶¶ 1-35 of its Amended Counterclaim as and for this ¶ 36, as if fully set forth herein.

37. Plaintiffs wrongfully terminated their Franchise Agreements in violation of the Franchise Agreements.

38. Plaintiff Lloyd Robert French has personally guaranteed performance of certain obligations of the Franchise Agreements, including assuming personal responsibility for the financial obligations under the agreements.

39. As a result of these wrongful terminations, Incredible Pizza has been injured and has suffered damages.

40. As a result of these wrongful terminations, Incredible Pizza has been injured and has suffered damages, including, without limitation, loss of revenue, profit, attorneys' fees and

expenses, pre and post judgment interest and other actual, consequential and incidental damages for which it seeks recovery against all plaintiffs, jointly and severally.

**COUNT IV – BREACH OF CONTRACT**
**(AGAINST FEC HOLDINGS, LP; FEC MESQUITE, LP; FEC CHAMPIONS, LP; AND LLOYD ROBERT FRENCH, III)**

41.     Incredible Pizza repeats and realleges ¶¶ 1-40 of its Amended Counterclaim as and for this ¶ 41, as if fully set forth herein.

42.     Plaintiffs unilaterally closed the Mesquite Center, without notice, and in breach of their franchise agreement.

43.     After closure of their Mesquite Center and termination of their franchise agreement, plaintiffs further breached the franchise agreement by refusing to comply with their obligations in Sections 16.6 and 16.7 of the franchise agreement by honoring Incredible Pizza's contractual rights to purchase the assets of the Mesquite Center at fair market value and to assume the leasehold of the Mesquite Center.

44.     Instead, plaintiffs refused to allow Incredible Pizza to purchase the assets of the Mesquite Center and, has upon information and belief, sold the assets to third parties in violation of the franchise agreement.

45.     Plaintiffs have also refused, and continue to refuse, to allow Incredible Pizza to assume the leasehold for the Mesquite Center.

46.     Plaintiff Lloyd Robert French has personally guaranteed performance of certain obligations of the Franchise Agreements, including assuming personal responsibility for the financial obligations under the agreements.

47.     As a result of plaintiffs' breaches of their franchise agreement, Incredible Pizza has suffered damages, including, without limitation, loss of revenue, profit, attorneys' fees and

expenses, pre and post judgment interest and other actual, consequential and incidental damages for which it seeks recovery against FEC Holdings, LP; FEC Mesquite, LP; FEC Champions, LP; And Lloyd Robert French, III, jointly and severally.

**COUNT IV – BREACH OF CONTRACT**
**(AGAINST FEC HOLDINGS, LP; FEC MESQUITE, LP; FEC CHAMPIONS, LP; AND LLOYD ROBERT FRENCH, III)**

48.     Incredible Pizza repeats and realleges ¶¶ 1-47 of its Amended Counterclaim as and for this ¶ 48, as if fully set forth herein.

49.     Plaintiffs have failed to pay, and continue to fail to pay, Incredible Pizza amounts due and owing under the Franchise Agreements, including royalties and advertising fees.

50.     Plaintiff Lloyd Robert French has personally guaranteed performance of certain obligations of the Franchise Agreements, including assuming personal responsibility for the financial obligations under the agreements.

51.     As a result of plaintiffs' breaches of their franchise agreement, Incredible Pizza has suffered damages, including, without limitation, loss of revenue, profit, attorneys' fees and expenses, pre and post judgment interest and other actual, consequential and incidental damages for which it seeks recovery against FEC Holdings, LP; FEC Mesquite, LP; FEC Champions, LP; And Lloyd Robert French, jointly and severally.

**PRAYER FOR RELIEF**

**WHEREFORE, INCREDIBLE PIZZA** respectfully prays for the following relief against defendants:

A.     A preliminary and permanent injunction:

(1)     Requiring plaintiffs to comply with Incredible Pizza's option to purchase the assets of plaintiffs' Incredible Pizza centers as set forth in Section 16.6 of the Franchise Agreements;

(2)     Requiring plaintiffs to comply with Incredible Pizza's option to assume the leases on the real property upon which plaintiffs'

Incredible Pizza centers are located as set forth in Section 16.7 of the Franchise Agreements;

(3)     Prohibiting plaintiff from selling, transferring, encumbering or otherwise disposing of the leaseholds or assets of plaintiff's seven Incredible Pizza centers other than to Incredible Pizza;

(4)     Prohibiting plaintiffs from interfering in any other manner with the exercise of Incredible Pizza's option rights; and

(5)     Granting Incredible Pizza any additional relief that the Court deems just and proper.

B.     Damages for plaintiffs' breaches of the Franchise Agreements and Area Development Agreements including pre and post judgment interest and the damages described more fully above;

C.     Costs and Attorneys Fees; and

D.     Such other and further relief as the Court deems just and proper.

Dated: March 4, 2010

Respectfully submitted,

**CHENG  COHEN LLC**

By: /s/ Fredric A. Cohen
    Fredric A. Cohen
    Amy C. Haywood
    311 N. Aberdeen St., Suite 400
    Chicago, IL 60607
    T: (312) 243-1717
    F: (312) 277-3961
    fredric.cohen@chengcohen.com
    amy.haywood@chengcohen.com

**-AND-**

**CARNAHAN, EVANS, CANTWELL, & BROWN, P.C.**

By: /s/ Joseph D. Sheppard III
    Joseph D. Sheppard III
    John L. Waite III
    2805 S. Ingram Mill Road
    Chicago, IL 65808

T: (417) 447-4400
F: (417) 447-4401
jsheppard@cecb.com
jwaite@cecb.com

*Attorneys for Defendants Incredible Pizza Franchise Group, LLC, Richard Barsness and Cheryl Barsness*

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that on March 17, 2010, a true and correct copy of the foregoing *DEFENDANTS' AMENDED ANSWER AND COUNTERCLAIM* was served via court's ECF upon:


DADY & GARDNER, P.A.              CUNNINGHAM LAW GROUP
J. Michael Dady                  Lloyd R. Cunningham
John D. Holland                  Joe H. Reynolds
Mary K. Descombaz                Lori A. Swann
5100 IDS Center                  12 Greenway Plaza, Suite 1310
80 South Eighth Street           Houston, Texas 77046
Minneapolis, MN 55402

*Attorneys for FEC Plaintiffs*        *Attorneys for Plaintiff L. Robin French, III*


                           /s/ Rick Cheng